**EXHIBIT 1**

Case 2:26-cv-01093-JCC    Document 1-1    Filed 03/31/26    Page 1 of 16

A-1 p.1 l5

FILED
2026 MAR 05
KING COUNTY
SUPERIOR COURT CLERK

CASE #: 26-2-07884-0 SEA

# SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

ANGELITA G. UTLEG, PhD,
*Plaintiff,*

v.

UNIVERSITY OF WASHINGTON;
MARGARET HEITKEMPER, PhD, RN, FAAN;
HILAIRE THOMPSON, PhD, RN, FAAN;
KENDRA KAMP, PhD, RN;
UNIVERSITY OF WASHINGTON PHYSICIANS;
ASSOCIATION OF UNIVERSITY PHYSICIANS;
and JOHN DOES 1-10,
*Defendants.*

26-2-07884-0 SEA

COMPLAINT FOR TORT, Other

## I. VENUE

Plaintiff has made the choice to bring this matter to this Court, rather than a court in a different county or state, for the reason(s) provided below:

**Venue is proper in King County Superior Court pursuant to RCW 4.12.020(1) because the Defendants reside in King County, Washington, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in King County, Washington.**

## II. BACKGROUND FACTS

Plaintiff has provided a short and plain statement of the facts needed to establish the claims made in this Complaint in the numbered paragraphs below:

A-1 p-2 of 5

1. Plaintiff Dr. Angelita Utleg was a doctoral student and NIH F31 grantee at the University of Washington School of Nursing from 2017 to 2025.

2. Defendants Dr. Margaret Heitkemper (Plaintiff's advisor), Dr. Hilaire Thompson (Dean and co-advisor), and Dr. Kendra Kamp engaged in a systematic campaign to steal Plaintiff's intellectual property, including her research blueprint, NMR data, and curated metadata.

3. When Plaintiff objected to this theft, Defendants retaliated by censoring her dissertation, sabotaging her doctoral committee, inserting Dr. Kamp without consent, and ultimately terminating her postdoctoral position under false pretenses.

4. Defendants fraudulently offered Plaintiff a T32 postdoctoral position to silence her, while simultaneously misrepresenting the status of her F31 grant. When she refused to comply with demands to falsify data (removing healthy controls from manuscripts), she was threatened with termination.

5. The retaliation escalated to criminal acts: Dean Thompson illegally accessed Plaintiff's NIH eRA Commons account and deleted her X-Train report (July 11, 2025); and Plaintiff's personal devices were subjected to cyber-intrusion and file destruction, as documented in FBI IC3 Report #N2507280240315720.

6. As a direct result of Defendants' conduct, Plaintiff has suffered severe emotional distress, loss of intellectual property, damage to her professional reputation, and significant financial harm, including lost wages and career opportunities.

---

## III. CLAIMS & CAUSES OF ACTION

Plaintiff has identified each claim being brought in this Complaint by the type of claim it is, and identified the cause of action for that claim, in the numbered list below:

---

### (1) Conversion / Theft of Intellectual Property

| | |
|---|---|
| This is a claim for: | Defendants intentionally and without authorization took, used, and published Plaintiff's research data, protocols, and frameworks for their own benefit. |
| The cause of this claim is: | Common law conversion; theft of intellectual property. |

---

### (2) Whistleblower Retaliation

A-1 p. 3 of 5

| This is a claim for: | Defendants engaged in adverse actions, including censorship, committee sabotage, and termination of employment, in response to Plaintiff's protected reports of research misconduct. |
|---|---|
| The cause of this claim is: | 41 U.S.C. § 4712 (NDAA whistleblower protection); RCW 4.92.130; Public policy. |

### (3) Intentional Infliction of Emotional Distress (IIED)

| This is a claim for: | Defendants' extreme and outrageous conduct, including cyber-attacks, federal record tampering, and coercion to commit fraud, caused Plaintiff severe emotional distress. |
|---|---|
| The cause of this claim is: | Common law tort of outrage / intentional infliction of emotional distress. |

### (4) Fraud

| This is a claim for: | Defendants made false representations to Plaintiff regarding her F31 status, postdoctoral appointment, and health coverage, upon which she justifiably relied to her detriment. |
|---|---|
| The cause of this claim is: | Common law fraud; fraudulent inducement. |

### (5) Violation of the Consumer Protection Act (CPA)

| This is a claim for: | Defendants engaged in unfair and deceptive acts in trade or commerce by issuing conflicting official records, confirming then denying coverage, and continuing to deduct premiums for coverage they later disclaimed. |
|---|---|

A-1 p. 4 of 5

| The cause of this claim is: | RCW 19.86 (Washington Consumer Protection Act). |

## IV. DAMAGES

Plaintiff has sustained the following damages due to Defendant's conduct. The amount of damages may be unknown at this time and will be established at the time of trial. These damages are of the type(s) listed below:

| Type of Damages | Description |
| --- | --- |
| 1. General Damages | Pain and suffering, emotional distress, loss of enjoyment of life |
| 2. Special Damages | Lost wages, lost earning capacity, damage to professional reputation |
| 3. Property Damage | Loss of intellectual property (theft of research data, frameworks, and publications); damage to computers |
| 4. Other | Medical expenses ($258 bill and ongoing collection harassment); insurance premiums paid ($132/month); costs of forensic investigation and data recovery |

## V. REQUEST FOR RELIEF

Plaintiff requests that the Court enter a judgment against Defendant as follows:

1. For general damages in an amount to be proven at trial, but no less than $500,000, for emotional distress, pain and suffering, and loss of enjoyment of life;
2. For special damages in an amount to be proven at trial, but no less than $500,000, for lost wages, lost earning capacity, and damage to professional reputation;
3. For economic damages in an amount to be proven at trial, but no less than $500,000, for the value of stolen intellectual property, including the loss of future royalties, grant funding, and career opportunities;
4. For punitive or treble damages as allowed by law for fraud, conversion, and violation of the Consumer Protection Act;
5. For costs and disbursements incurred in this action;
6. Awarding Plaintiff any further or additional relief which the Court finds equitable, appropriate, or just.

A-1 p.5 of 5

DATED this 4th day of March, 2026.

Angelita G. Utleg, PhD
Plaintiff, Pro Se
34028 19th Ave SW
Federal Way, WA 98023
(206) 953-4975
angie.utleg@gmail.com

A-2 p. 1 of 10

**EXHIBIT A-2**
**TITLE: EXECUTIVE SUMMARY AND FACTUAL ALLEGATIONS**

**Description:**
This exhibit provides a comprehensive narrative of the facts underlying Plaintiff's claims,
including the theft of intellectual property, censorship of dissertation, committee sabotage,
fraudulent postdoc offer, conflicting benefit records, retaliation, cyberattack, and cover-up.

**What This Proves:**

- Plaintiff's research and intellectual property were stolen by Defendants
- Defendants systematically censored and sabotaged Plaintiff's academic work
- The postdoc position was offered as a vehicle for control, not mentorship
- Defendants created conflicting official records to justify retroactive benefit denial
- Retaliation escalated from record tampering to cyberattack
- The University of Washington engaged in a coordinated cover-up

*(Narrative begins on following page)*

A-2 p2 of 10

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

ANGELITA G. UTLEG, PhD,
Plaintiff,

v.

UNIVERSITY OF WASHINGTON;
MARGARET HEITKEMPER, PhD;
HILAIRE THOMPSON, PhD;
and KENDRA KAMP,
Defendants.

---

**EXHIBIT A-2: EXECUTIVE SUMMARY AND FACTUAL ALLEGATIONS**

I, Angelita G. Utleg, PhD, declare under penalty of perjury under the laws of the State of Washington that the following is true and correct:

---

**I. JURISDICTIONAL AND PROCEDURAL BACKGROUND**

1. On December 5, 2025, I timely filed a Tort Claim with the Washington State Department of Enterprise Services (DES) regarding the conduct described herein, in compliance with RCW 4.92.110 and RCW 4.96.020. A true and correct copy of that claim is attached as Exhibit DES-1.
2. Since Summer 2025, I have reported the underlying misconduct to multiple federal agencies, including:
   - Department of Justice (DOJ) – False Claims Act violations
   - HHS Office of Inspector General (OIG) – Grant fraud and whistleblower retaliation under 41 U.S.C. § 4712
   - National Institutes of Health (NIH) – Research misconduct and false records
   - Federal Bureau of Investigation (FBI) – Cyber intrusion and destruction of records (IC3 #N2507280240315720 and four additional IC3 reports)

A-2 p.3 of 10

3. NIH has reopened its investigation based on my FOIA request and new evidence, confirming the credibility of my claims.

## II. PARTIES

4. Plaintiff Angelita G. Utleg, PhD is a nurse scientist and the named Principal Investigator on NIH F31 Individual Fellowship NR018794-01A1. She was a doctoral candidate (2017-2024) and T32 postdoctoral fellow (2024-2025) at the University of Washington School of Nursing. She resides in King County, Washington.

5. Defendant University of Washington is a state institution of higher education and the grantee institution responsible for administering the F31 and T32 federal grants. It may be served through the Washington State Attorney General's Office, 800 Fifth Avenue, Suite 2000, Seattle, WA 98104.

6. Defendant Margaret Heitkemper, PhD, RN, FAAN was Plaintiff's primary doctoral advisor, F31 sponsor, and T32 co-director. She is sued in her individual and official capacities.

7. Defendant Hilaire Thompson, PhD, RN, FAAN was Plaintiff's co-advisor and Dean of the School of Nursing. She is sued in her individual and official capacities.

8. Defendant Kendra Kamp, PhD, RN was Plaintiff's Post-doctoral mentor (listed in name only on the T32 Offer Letter) who participated in the misconduct described herein, including the theft of Plaintiff's intellectual property and the coercion to share data.

## III. JURISDICTION AND VENUE

9. This Court has jurisdiction under RCW 2.08.010.

10. Venue is proper in King County Superior Court under RCW 4.12.020 because the Defendants reside in King County and the acts and omissions complained of occurred in King County.

11. On December 5, 2025, Plaintiff timely filed a Tort Claim with the Washington State Department of Enterprise Services (DES) in compliance with RCW 4.92.110 and RCW 4.96.020. A true and correct copy of that claim is attached as Exhibit DES-1.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Research and Intellectual Property

12. Plaintiff's doctoral research pioneered the integration of NMR-based short-chain fatty acid (SCFA) metabolomics with microbiome data to understand irritable bowel syndrome (IBS).

A-2 p.4 of 10

13. In 2018, Plaintiff completed a Systematic Review on SCFAs establishing the dietary fiber-gut microbiota-tryptophan metabolism paradigm that became the foundation of her research program.

14. Plaintiff's NIH F31 application (funded 2020) integrated bile acid analysis, SCFA metabolomics, and microbiome data—a novel framework praised by Defendant Heitkemper in the application itself. Exhibit 2 (F31 Page 92, signed by Heitkemper) documents Plaintiff's independent study with Dr. Cui and the bile acid-SCFA integration as evidence of Plaintiff's research potential.

## B. The Theft of Intellectual Property

15. In March 2019, Defendant Heitkemper instructed Plaintiff to share her F31 application with Dr. Kendra Kamp, a research associate. Exhibit 3 (March 2019 Email).

16. While Plaintiff's F31 was under review (September 2020), Defendant Heitkemper's team was already planning SCFA profiling on the MAP cohort with Texas collaborators—the exact research proposed in Plaintiff's application. Exhibit 4 (Texas Collaborators Email).

17. On January 29, 2021, Plaintiff shared her metadata for 118 samples with the IBS Team in good faith. Exhibit 5 (118-Woman Metadata Email).

18. This metadata and associated NMR data were subsequently used by Heitkemper's team in publications and grant applications without Plaintiff's consent or attribution. Exhibit 6 (Data Laundering Emails).

## C. The CSM Folder: Proof of Theft and Spoliation

19. During investigation following the July 28, 2025 cyber intrusion, Plaintiff identified a folder titled "CSM Reference Folder" that originated on the K drive. The folder contained a file named "ANGIE_Association assessments" which was a compilation of Plaintiff's F31 research slides—including the gut-brain-microbiome-CBT framework (Figure 1 of Plaintiff's F31).

20. Despite bearing Plaintiff's name in the file title, the file was:
    o Stored in Defendant Kamp's reference materials
    o Locked with "Read Only" access, preventing Plaintiff from viewing or modifying it
    o Later corrupted and rendered unopenable

21. A visual representation of this file's metadata and corruption is attached as Exhibit __. This folder and its contents were deleted during the K drive purge that followed Plaintiff's whistleblowing activity.

## D. Censorship and Sabotage of Dissertation

22. Defendants systematically censored Plaintiff's dissertation by ordering removal of:
    o Sleep data
    o Tryptophan analyses
    o Psychological distress markers
    o Bile acid data

23. Exhibit 7 (Heitkemper's Dissertation Comments) documents these censorship demands.

A2 p.5 of 10

24. On April 29, 2022, Defendant Heitkemper promised Plaintiff: "The tryptophan is only used for validation... you are a co-author... YES, you can use the data." This promise was later broken. Exhibit 8 (April 29, 2022 Email).

25. Plaintiff's doctoral committee was systematically sabotaged:
   - Original GSR Dr. Michael Rosenfeld (recommended by Heitkemper) remained unresponsive to complaints
   - Acting Dean Tatiana Sadak blocked Dr. Min Li's appointment as GSR
   - Dr. Kendra Kamp was inserted over Plaintiff's objection
   - Defendant Thompson gaslighted Plaintiff, suggesting counseling rather than addressing complaints
   - Graduate School Dean William Mahoney failed to investigate

26. Exhibit 9 (Committee Sabotage Chain, February-March 2024) documents this obstruction.

27. Plaintiff's academic record was falsified with fraudulent "N" grades for Summer and Fall 2020—the exact quarters she performed the foundational laboratory work generating the stolen data. Defendants have refused to correct this record, violating FERPA. Exhibit 10 (Transcript with "N" Grades, July 3, 2025).

## E. The Postdoc as Vehicle for Control

28. Plaintiff's T32 postdoctoral position (offered May 12, 2024) was not a legitimate training opportunity but a vehicle for continued control. Exhibit 11 (Fraudulent T32 Offer).

29. Multiple versions of the offer letter exist with tampered date fields, demonstrating contract fraud. Exhibit 12 (Tampered Offer Letters).

30. On June 6, 2025, during a Zoom meeting witnessed by Dr. Cynthia Dougherty (T32 Program Director), Defendant Heitkemper threatened: "You have to go find your own group" when Plaintiff refused to remove healthy control data from her manuscript. Exhibit 13 (The Final Threat documentation).

31. Dr. Sandi Navarro, acting on Heitkemper's directives, demanded Plaintiff delete healthy control analyses from her manuscript's symptom tables as a condition for publication support. Under duress, Plaintiff was forced to remove the healthy control data—an act that constituted coercion to commit scientific fraud.

## F. The Retaliation

32. On July 11, 2025, at 11:20 AM, Plaintiff followed Vice President Joe Giffels's instruction and emailed NIH and UW Office of Research Misconduct Proceedings (ORMP) reporting that Heitkemper had misinformed her for three years about her F31 status.

33. At approximately 12:23 PM—just over one hour later—Defendant Thompson illegally accessed Plaintiff's NIH eRA Commons account and deleted her X-Train report. Screenshots confirm this tampering. Exhibit 14 (X-Train Tampering Screenshots).

34. This constitutes identity theft, federal record falsification (18 U.S.C. § 1001), and obstruction of justice (18 U.S.C. § 1519).

A-2 p.6 ag 10

35. On July 28, 2025, while Plaintiff was online, files began deleting in real time. Screenshots turned blank. Gmail became inaccessible. LinkedIn posts disappeared. Plaintiff filed FBI IC3 Report #N2507280240315720. Exhibit 15 (IC3 Report).

36. Forensic evidence confirms remote access and data destruction, including a OneDrive-UW Alias folder on an offline USB drive and a hardware-level backdoor.

## G. The Sham Postdoc and Conflicting Benefit Records

37. Defendants created conflicting official records regarding Plaintiff's appointment:

| Record | Source | Start Date | End Date |
|---|---|---|---|
| T32 Offer Letter | UW | June 19, 2024 | June 18, 2025 |
| NIH X-Train Record | NIH | June 19, 2024 | June 18, 2025 |
| WA State Benefits Letter | UW HR | July 1, 2024 | June 30, 2025 |

38.
Exhibit 16 (Conflicting Benefit Records) contains these documents.

39. Relying on these records, Plaintiff scheduled a medical appointment for July 17, 2025.

40. On June 30, 2025, Plaintiff confirmed coverage with the Washington State Benefits Administrator (Reference #251810011443) and Regence BlueCross.

41. Plaintiff's paychecks reflect a $132/month deduction for health insurance premiums beginning July 2024.

42. After the appointment, Defendants retroactively revoked Plaintiff's coverage, and she received a $258 bill. Exhibit 17 ($258 Bill and Dispute Correspondence).

43. This revocation occurred after Plaintiff's protected whistleblowing activity.

## H. Exhaustion of Remedies

44. Plaintiff has exhausted all internal remedies:
- Title IX complaint filed and dismissed (October 2025)
- CRCO appeal denied (October 21, 2025)
- Multiple complaints to UW HR, IT, and leadership
- Formal reports to NIH ORI, HHS OIG, FBI, and DOJ

45. NIH has reopened its investigation based on Plaintiff's FOIA request and new evidence.

## V. CAUSES OF ACTION

A-2 p.7 of 10

## COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (OUTRAGE)
(Against All Defendants)

46. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
47. Defendants' conduct—theft of intellectual property, censorship of dissertation, coercion to commit fraud, cyber intrusion, and retaliatory benefit revocation—was extreme and outrageous.
48. This conduct exceeded all bounds of tolerated conduct in a civilized society.
49. Defendants acted with knowledge that Plaintiff would suffer severe emotional distress.
50. Plaintiff has suffered severe emotional distress including anxiety, depression, PTSD symptoms, insomnia, and cardiovascular symptoms.

## COUNT II: NEGLIGENT MISREPRESENTATION
(Against All Defendants)

51. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
52. Defendants supplied false information (conflicting appointment dates) to Plaintiff and to federal agencies.
53. Plaintiff justifiably relied on this information in scheduling medical care and making career decisions.
54. Defendants knew or should have known Plaintiff would rely on these official records.
55. As a direct result, Plaintiff incurred a $258 medical bill and associated damages.

## COUNT III: BREACH OF FIDUCIARY DUTY
(Against All Defendants)

56. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
57. As Plaintiff's educators, advisors, and employer, Defendants owed Plaintiff a duty of good faith and fair dealing.
58. Defendants breached this duty by:
    - Stealing Plaintiff's intellectual property
    - Censoring Plaintiff's dissertation
    - Coercing Plaintiff to commit scientific fraud
    - Creating conflicting records to manipulate outcomes
    - Accepting premium payments while planning to deny coverage
    - Retroactively revoking confirmed benefits
    - Destroying emails and files documenting misconduct

## COUNT IV: RETALIATION IN VIOLATION OF PUBLIC POLICY
(Against All Defendants)

59. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
60. Plaintiff engaged in protected activity by reporting research misconduct and grant fraud to federal authorities beginning June 2025.

A-2 p. 8 of 10

61. Defendants subjected Plaintiff to adverse actions because of this protected activity, including:
    - X-Train record deletion within one hour of NIH/ORMP report
    - Cyber intrusion and file destruction (July 28, 2025)
    - Retroactive benefit revocation
62. This retaliation violates the clear public policy of Washington State and the United States protecting whistleblowers who expose fraud on the government, codified at RCW 4.92.130 and 41 U.S.C. § 4712.

## COUNT V: VIOLATION OF THE CONSUMER PROTECTION ACT (RCW 19.86)
(Against All Defendants)

63. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
64. Defendants engaged in unfair and deceptive acts in the conduct of trade or commerce by:
    - Issuing conflicting official records regarding Plaintiff's appointment
    - Confirming coverage then retroactively denying it
    - Continuing to deduct premiums for coverage they later disclaimed
65. These acts affected the public interest, as they involve administration of federal grant funds and public employee benefits.
66. Plaintiff sustained injury as a result.

## COUNT VI: CONVERSION / THEFT OF INTELLECTUAL PROPERTY
(Against Heitkemper and UW)

67. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
68. Defendants wrongfully took and exercised dominion over Plaintiff's intellectual property—her research blueprint, data, and preliminary findings—without consent.
69. This property had substantial value.
70. Plaintiff has been deprived of this property and its value.

## COUNT VII: FRAUD
(Against Heitkemper)

71. Plaintiff incorporates paragraphs 1-45 as if fully set forth herein.
72. Defendant Heitkemper made false representations to Plaintiff, including:
    - The promise that Plaintiff could use tryptophan data (April 29, 2022)
    - Representations that Plaintiff's postdoc was a legitimate training opportunity
73. Heitkemper knew these representations were false or made them recklessly.
74. Plaintiff justifiably relied on these representations to her detriment.
75. Plaintiff suffered damages as a result.

## VI. DAMAGES

A-2 p. 9 of 10

76. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered:

| Damage Category | Amount / Description |
| --- | --- |
| Loss of Intellectual Property | Research paradigm, data, and seminal findings—foundation of Plaintiff's scientific career. Estimated value: $500,000+ |
| Lost Wages/Earning Capacity | Destruction of career in academic research. Estimated annual salary for PhD-level scientist: $150,000+ |
| Medical Expenses | $258 out-of-pocket bill; plus $77 paid under duress (December 2025); future therapy/psychiatry costs |
| Premiums Paid | $132/month for coverage period (benefits revoked) |
| Financial Harm | Scholarship revocations, loan defaults, delayed aid |
| Emotional Distress | Severe anxiety, depression, PTSD symptoms, insomnia |
| Reputational Destruction | Systematic dismantling of Plaintiff's scientific credibility |
| Legal/Forensic Costs | Expenses for legal consultation, digital forensic analysis |

77.
Plaintiff is entitled to:
- o Compensatory damages
- o Treble damages under CPA (RCW 19.86.090)
- o Costs and reasonable attorneys' fees
- o Such other relief as the Court deems just and proper

78. The "ANGIE_Assessments" file—a compilation of Plaintiff's F31 research slides stored in Defendant Kamp's reference folder and later corrupted—demonstrates that Defendants not only stole Plaintiff's intellectual property but actively prevented Plaintiff from accessing her own work while using it for their own advancement.

---

## VII. JURY DEMAND

79. Plaintiff demands a trial by jury on all issues so triable.

---

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A-2 p. 10 of 10

A. Compensatory damages in an amount to be proven at trial;

B. Treble damages under the Consumer Protection Act;

C. Costs and reasonable attorneys' fees;

D. Pre-judgment and post-judgment interest as provided by law;

E. Such other and further relief as the Court deems just and proper.

DATED this 4th day of March, 2026.

Angelita G. Utleg, PhD
Plaintiff, Pro Se
34028 19th Ave SW
Federal Way, WA 98023
(206) 953-4975
angie.utleg@gmail.com